AO 91 (Rev. 11/11)  Criminal Complaint

| | | |
|---|---|---|
| AUSA: Jeanine Brunson | | Telephone: (313) 226-9100 |
| Special Agent: Robert Schmitz | | Telephone: (313) 965-2323 |

# UNITED STATES DISTRICT COURT
for the

Eastern District of Michigan

| | | |
|---|---|---|
| United States of America<br>v.<br>D-1 Deonte Durell Draughn<br>D-2 Fernando Montaz Jefferson | Case No. | Case: 2:25−mj−30775<br>Assigned To : Unassigned<br>Assign. Date : 12/29/2025<br>Description: CMP USA V. SEALED (DJ) |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of __August 8, 2025__ in the county of __Shelby Township__ in the __Eastern__ District of __Michigan__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 922(g)(1) | Felon in possession of a firearm |

This criminal complaint is based on these facts:

See attached affidavit.

☑ Continued on the attached sheet.

_____
*Complainant's signature*

Robert Schmitz, Special Agent
*Printed name and title*

Sworn to before me and signed in my presence
and/or by reliable electronic means.

Date: December 30, 2025

City and state: Detroit, MI

_____
*Judge's signature*

Hon. Kimberly G. Altman, U.S. Magistrate Judge
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, Special Agent Robert J. Schmitz, assigned to the FBI Violent Crime Task Force, being duly sworn, hereby state:

### INTRODUCTION AND BACKGROUND

1. I have been a Special Agent with the Federal Bureau of Investigation (FBI) since January 2016. I am currently assigned to the FBI Detroit Violent Crime Task Force (VCTF). I have conducted or assisted in numerous investigations of federal violations, including crimes of violence, firearms, and drug trafficking. I have gained experience through training and everyday work related to these types of investigations.

2. I make this affidavit based on my training and experience, my participation in this investigation, and reports, communications, and information from other members of VCTF. The information outlined below is provided for the limited purpose of establishing probable cause and does not contain all details or all facts of which I am aware relating to this investigation.

3. The information in this affidavit is provided for the limited purpose of establishing probable cause that Deonte Durell DRAUGHN and Fernando Montaz JEFFERSON violated 18 U.S.C. § 922(g)(1), felon in possession of a firearm.

### PROBABLE CAUSE

4. In July 2025, VCTF received information from a CHS that an individual known as "Tay", who resided at an apartment complex in Shelby

Township, MI, was involved in the sale of controlled substance pills including Percocet and Adderall. CHS described Tay as being an African American male with braided hair. CHS also advised that Tay sold firearms obtained from a connection in Detroit. CHS provided Tay's number as XXX-XXX-3110.

5. The FBI began working with this CHS in approximately June 2025. To date, information provided by CHS has been deemed to be credible. The FBI has never had a reason to doubt CHS's truthfulness. In this case, as described in further detail below, CHS's information has been corroborated by a consensual recording (controlled purchase of firearm). Affiant has also reviewed text messages that CHS exchanged with DRAUGHN. The text messages corroborate the information provided by CHS.

6. FBI VCTF conducted further research on XXX-XXX-3110 and determined that XXX-XXX-3110 was linked to a CashApp account with user name "Legend Draughn" and a TikTok account of "PainToPurposeTV". Furthermore, a search of a law enforcement database revealed that XXX-XXX-3110 was an active AT&T number associated with DRAUGHN, DOB: XX/XX/1990.

7. A criminal history run on DRAUGHN revealed the following felony convictions: Weapons-Carrying Concealed (2012), Weapons-Firearms-Posession by Felon (2013), and Weapons Felony Firearm (2013).

8. CHS reported that on August 1, 2025, DRAUGHN was attempting to sell CHS a Glock handgun with an extended magazine. I reviewed a screenshot of the text message exchange between DRAUGHN and CHS. The following photograph was sent from DRAUGHN to CHS:



9. CHS reported that on August 7, 2025, DRAUGHN offered to sell a long gun to CHS. I reviewed a screenshot of the text message exchange between DRAUGHN and CHS. The following photograph and text message was sent from DRAUGHN to CHS:

3



10. As noted in the screenshot above, DRAUGHN implies that his connection ("he") had sold the .45 caliber handgun. I believe that the .45 caliber handgun is likely the Glock with extended magazine that DRAUGHN texted to CHS on August 1, 2025.

11. I believe, based on my review of the text message and information provided by CHS, that DRAUGHN was offering to sell this long gun to CHS. The following day, the FBI directed CHS to contract DRAUGHN and agree to purchase the firearm from DRAUGHN.

12. On August 8, 2025, the FBI setup a controlled purchase of the firearm from DRAUGHN. Affiant and FBI TFO met with CHS at a pre-determined meeting location and searched the CHS and CHS's vehicle for contraband to include large sums of money, weapons, and narcotics, with negative results. CHS

4

was also provided with operational funds and recording devices before departing to meeting with DRAUGHN.

13. CHS eventually met with DRAUGHN in the parking lot of a restaurant in Shelby Township, MI. DRAUGHN told the CHS he was in contact with his connection who was bringing the firearm from another location.

14. I reviewed toll records for DRAUGHN's cell phone on August 8, 2025. The toll records showed that during the time leading up to and while CHS was meeting with DRAUGHN, DRAUGHN's cell phone placed four outgoing calls and received three incoming calls from XXX-XXX-1630. A search of this number in a law enforcement database revealed that it is an active T-Mobile number associated with Fernando Montaz JEFFERSON (JEFFERSON), DOB: XX/XX/1974. Additionally, this number was listed as a phone number for JEFFERSON in a 2023 Taylor Police Department report.

15. After waiting with DRAUGHN for a period of time on August 8, 2025, a Chrysler Town and Country bearing Michigan license plate EUPXXXX registered to JEFFERSON entered the area and parked next to CHS's vehicle.

16. I reviewed the consensual recording conducted by CHS and observed the following take place:

17. DRAUGHN opens the trunk of the Chrysler Minivan and asks JEFFERSON, "Want the whole thing, take the whole thing…?" JEFFERSON responds, "Yeah..." DRAUGHN is out of view of the camera. CHS then converses

with JEFFERSON. JEFFERSON tells CHS that he previously spent 11 years in prison. DRAUGHN is then observed closing the trunk of CHS's vehicle. CHS then shakes hands with DRAUGHN and, although out of view of the camera, is believed to pass $700 cash in exchange for the firearm from DRAUGHN. CHS then departs the area.

18. Following the meeting, Affiant and FBI TFO met with CHS again to recover the remaining operational funds, the recording devices, and a clear plastic bin from the trunk of CHS's vehicle containing a shotgun, ammunition, and magazines. The items were concealed in the plastic bin underneath pillows and blankets. The CHS was then searched again for contraband with negative results. The following is a photograph of the plastic bin containing the firearm, ammunition and magazines, after it was recovered by the FBI:



19. The firearm recovered from CHS's controlled purchase appears to be identical to the firearm depicted in the photograph that DRAUGHN previously texted to CHS.

20. The CHS was shown an unmarked driver's license photograph of JEFFERSON. The CHS confirmed that the individual pictured was DRAUGHN's contact who drove the shotgun to the meeting location in the Chrysler Town and Country.

21. I also reviewed the footage from CHS's recording of the driver of the Chrysler minivan and compared it to JEFFERSON's Michigan driver's license photograph. I believe them to be the same person.

22. A criminal history run on JEFFERSON revealed the following prior felony convictions: Weapons Felony Firearm (1993) and Armed Robbery (1993).

23. A bureau of Alcohol, Tobacco, and Firearms (ATF) trace was run on the shotgun recovered from the trunk of CHS's vehicle, which was determined to be a Tokarev Tar 12 – 12 Gauge shotgun with serial number 52-H24YD-001105. The trace request revealed that this firearm's country of origin was Turkey.

24. The FBI contacted an ATF Special Agent who is an Interstate Nexus Expert and provided the Special Agent with information about the Tokarev Tar 12 – 12 Gauge shotgun with serial number 52-H24YD-001105. The ATF Special Agent concluded that the firearm is a firearm as defined in Title 18 U.S.C., Chapter

44, Section 921(a)(3) and was manufactured outside the State of Michigan, and therefore previously traveled in interstate or foreign commerce.

## CONCLUSION

25. Based on the above information, there is probable cause to believe that DRAUGHN and JEFFERSON violated 18 U.S.C. § 922(g)(1), felon in possession of a firearm, in Shelby Township, Michigan, located in the Eastern District of Michigan.

Respectfully submitted,

_____
Robert J. Schmitz, Special Agent
Federal Bureau of Investigation

Sworn to before me and signed in my
presence and/or by reliable electronic means.

_____
Hon. Kimberly G. Altman
United States Magistrate Judge

Date:   December 30, 2025

8